FILED

DEC 13 2017

PATRICK KEANEY
Clerk, U.S. District Court
By_____
Deputy Clerk

EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

In the Matter of the Search of

Premises known as 900 E 4th Street, Tahlequah, Cherokee County, Oklahoma, the surrounding curtilage, garages, and outbuildings thereon.

Case No. **MJ - 17 - 087 - KEW**

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

### SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section(s) 922(g)(1) and Title 21, United States Code, Section(s) 841(a)(1), 843 and 846, and the application is based on these facts:

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Ashley N. Stephens
SA, ATF
*Applicant's signature*

Sworn to before me and signed in my presence.

Date:   12-13-17

_____
*Judge's signature*

City and state:   Muskogee, Oklahoma

UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT SEARCH WARRANT

I, Special Agent Ashley N. Stephens, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND INVESTIGATOR BACKGROUND

I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been so employed since July of 2004. Before joining the ATF, I was employed as a Police Officer with the Tahlequah Police Department, in Tahlequah, Oklahoma, for three years. I successfully completed the Council on Law Enforcement Education and Training Academy as required by the State of Oklahoma for peace officer certification. I also completed the Criminal Investigator Training Program required by the ATF to be an ATF criminal investigator. I also completed the Special Agent Basic Training Academy required by ATF for all special agents employed by ATF. In connection with my official duties as an ATF Special Agent, I investigate criminal violations of Federal Firearms Laws, Federal Arson Laws, Federal Explosives Laws and Federal Narcotics laws.

During the first four (4) years of my employment with ATF, I was assigned to the North Texas High Intensity Drug Trafficking Area (HIDTA) Violent Crime Task Force where I was responsible for investigating criminal violations of Federal Firearms Laws and the Controlled Substances Act. I was the lead case agent for an Organized Crime Drug Enforcement Task Force (OCDETF) which resulted in numerous drug and firearm seizures. I have been the affiant for numerous state and federal search warrants. I have been involved in multiple investigations over my career which have resulted in the seizure of controlled substances and firearms, resulting in the successful prosecution of individuals involved. During my career, I have received hundreds of hours of training, including training regarding the investigation of those who are involved in the armed illicit distribution of controlled substances and training regarding individuals who commit

1

fraudulent acts. I have received training and have experience including, but not limited to, working in an undercover capacity, surveillance, management of confidential informants, drug-trafficking conspiracies, money laundering, organized criminal activity investigations, the preparation and execution of firearm and drug related search warrants and debriefing of informants and witnesses.

I am an ATF Certified Explosives Specialist (Certification Number 12-42) and as such have received numerous hours of training regarding explosives and the investigation of explosive cases. I have attended numerous explosive schools i.e. Certified Explosive Specialist Basic, Advanced Explosives Disposal Techniques, Chemistry of Pyrotechnics, Homemade Explosives Identify Process and Disposal, Chemistry of Pyrotechnics, Chemistry of Explosives, Naval Basic Improvised Explosive Devices, Green Beret Special Forces Homemade Explosives Course, and Advanced Ordnance Identification to name a few. I am currently in the Master's Degree Program at Oklahoma State University pursuing an advanced degree in Forensic Science for Arson and Explosives Investigation. I have taught explosives classes both nationally and internationally at location such as El Salvador, Botswana and British Columbia. I have been qualified and testified as an explosives expert in federal and state court.

I have received and completed the Firearms Interstate Nexus Training Basic School, provided by the ATF Firearms Technology Branch in Martinsburg, WV. During the training at the Firearms Interstate Nexus Training Course in Martinsburg, WV, I personally examined the ATF Firearms Technology Branch's Reference Collection, which includes approximately 10,000 firearms. In the course of my duties in establishing firearms interstate commerce, I have consulted various firearm publications and periodicals, have accessed official licensing files and have examined other documents. I have also consulted with other firearms experts, all of which leads to my expertise in the movement of firearms in interstate commerce. As an expert I have testified

2

in federal court regarding interstate nexus and firearms' subsequent effect on and travel status of firearms as they pertain to interstate commerce.

I am also a Certified Fire Investigator responsible for providing technical support and analysis to assist other ATF Special Agents in fire investigations and training activities. This technical support includes: fire origin and cause determinations, court preparation and presentation of evidence, technical interpretation of fire-related information, and presentation of expert witness opinions.

As a result of my training and experience I am familiar with the federal firearm and federal narcotics statutes. I know that pursuant to Title 18, United States Code, Section 922(g)(1) that it is unlawful for any person convicted of a felony to possess a firearm and or ammunition which has traveled in or affected interstate nexus. I also know that it is a violation of Title 21, United States Code, Section 841(a)(1) for a person to possess methamphetamine with the intent to distribute, additionally it is a violation of Title 21, United States Code, Section 846 for two or more persons to conspire to distribute methamphetamine. In addition, I also know that it is a violation of Title 21, United States Code, Section 843, for any person to knowingly or intentionally use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony. Specifically, a "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures or sounds of all kinds and includes mail, telephone, wire and radio.

I am familiar with the provisions of these statutes, and based upon my experience, I believe that the items described in this affidavit and which are sought with this search warrant are relevant and probative to the proof of violations of Title 21 and Title 18. Based on my experience, specialized training and information, that I have received from law enforcement agencies,

3

including other federal, state and local law enforcement agencies involved in the investigation of controlled substances and proceeds derived from the illegal possession and sale of controlled substances, I know that individuals involved in the distribution of illegal controlled substances have many characteristics in common. For instance, individuals who traffic and distribute methamphetamine and other controlled substances on a large scale commonly do so in leased or rented vehicles and automobiles, many of which have cleverly constructed hidden compartments for the concealment of controlled substances and other contraband, such as proceeds generated from the sale of controlled substances and other negotiable items.

Individuals engaged in the trafficking of controlled substances often convert outbuildings, campers, or other recreation vehicles (R.V.) into packaging rooms and storage facilities for their methamphetamine and/or other controlled substances. Additionally, concealed storage spaces and/or rooms are often constructed in residences behind false walls and entrances. These areas often contain packaging equipment such as plastic bags, heat sealers, cellophane wrapping, tape, weighing scales, airtight containers, and containers with false compartments, smoking devices and other drug paraphernalia.

Furthermore, persons who receive cash proceeds from the sale of methamphetamine and other controlled substances attempt to hide these profits through the laundering of currency by investing in lucrative businesses, sometime legitimate, sometimes illegitimate, to give the appearance that the drug proceeds are being generated by legitimate business activity. Individuals will commonly have "front" businesses to launder the proceeds of the sale of controlled substances, and often purchase real estate, vehicles, antiques, conveyances, precious metals, rare coins, and gemstones with those proceeds. Persons who traffic in methamphetamine and other controlled substances usually maintain books, records, receipts, notes, ledgers, bank records, money orders,

4

and other papers relating to the manufacture, sale, ordering, transportation, and distribution of controlled substances. These documents are maintained primarily to keep an inventory or "tally" sheet of their transactions. These individuals often "front" (provide controlled substances on consignment) controlled substances to their customers and associates and keep records concerning these transactions and the monies owed to them by their customers. The aforementioned books, records, receipts, ledgers, and other papers and documents described above are most often maintained where traffickers have ready access to them, such as on their persons, in their motor vehicles, and/or at their place of business or residence. I know that it is common for individuals who traffic in illegal controlled substances to hide contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, businesses, place of operation and/or motor vehicles, for ready access to them, and to conceal such items from law enforcement authorities. In addition, those individuals who traffic in illegal controlled substances commonly maintain lists of addresses and/or telephone numbers in their books, papers, and/or computer systems which identify their drug trafficking associates and organizations. In addition, these individuals also routinely utilize cellular telephone and paging devices to maintain contact with their criminal associates. These telephones are often located where these individuals conduct their illegal business, such as their homes and/or motor vehicles. Drug traffickers commonly use cellular telephones and paging devices to conduct their illegal activities, because they permit the individuals to remain mobile, thereby lessening the likelihood of detection by law enforcement officials. These individuals commonly give their cellular telephone numbers and their pager numbers to their associates so the associates can contact them at any time of day or night to conduct illegal drug transactions. I know that these same persons will keep pictures, text messages, emails, and other forms of communication regarding the possession or procurement of narcotics, firearms

and ammunition stored on their mobile devices; and that video/photographic images depicting narcotics, firearms and ammunition are commonly recovered from their cell phones. Furthermore, video/photographic images depicting the use of narcotics, firearms and ammunition are commonly recovered from cell phones in the possession of individuals engaged in the illegal trafficking of narcotics.

I also know that firearms are typically kept in the residence and/or place of business of these individuals for the purpose of protecting their illegal enterprise and intimidating their customers, competitors, and other individuals who might report their illegal activities to law enforcement. Firearms are tools of the trade for drug dealers. I have been involved in many search warrants involving illegal narcotics distributors and can state that on many occasions the suspects were found to be in possession of firearms. I know that these firearms are used by drug traffickers to protect their illegal enterprises. Those individuals who deal in illegal controlled substances often trade stolen items such as firearms, tools, electronics, stolen checks, and other financial instruments in the return for controlled substances. These traded items are often the product of burglaries, robberies, and thefts. Furthermore, five, ten and twenty dollar denomination bills are commonly utilized by buyers and sellers of controlled substances during their illegal transactions. I am aware that the distributors of methamphetamine generally distribute in ten ($10), twenty ($20), fifty ($50), and one hundred dollar ($100) denominations.

I also know that drug traffickers typically utilize counter-surveillance equipment to warn them of possible intruders as well as law enforcement officers, who may be approaching the residence to investigate possible illegal activities. I have personally observed such equipment present at drug traffickers' residences on numerous occasions. That drug traffickers will often distribute narcotics out of different vehicles, which they either own, rent, lease, or have the ability

to control in order to deter law enforcement's effort to thwart their livelihood. Often these drug traffickers will also distribute out of vehicles to keep law enforcement from ascertaining home addresses and locations where traffickers often reside.

As an ATF Special Agent, I know through my experience that most individuals who purchase firearms retain certain documents relating to those purchase, such as: sales receipts, factory warranties, and cancelled checks; among their personal papers in their residence or where they store their personal property. I also know through my experience, individuals who possess firearms also possess related items such as gun cases, ammunition, and gun cleaning equipment related to the care and maintenance of the firearms.

As an ATF Special Agent, I have found that prohibited persons hide firearms, ammunition and receipts/invoices related to the acquisition and disposition of firearms in all areas of their property, including but no limited to their residence, outbuildings, appurtenances and vehicles. Additionally, individuals who are prohibited from lawfully possessing firearms and ammunition, often maintain possession of their illegally possessed firearms and ammunition for long periods of time, often in excess of one (1) year.

As an ATF Special Agents, I know from my participation in the execution of numerous search warrants authorizing the seizure of firearms that those who own and possess firearms and ammunition generally keep them on their persons, in their residences and vehicles, or in places where they store their personal property. The reason owners of firearms generally maintain and preserve them over a long period of time include the facts that firearms are somewhat expensive, there is an administrative delay in buying them (particularly true for prohibited persons who must obtain firearms by subterfuge) and firearms do not easily wear out. In my experience, firearms are not depleted through use, nor are they exchanged immediately after being obtained. Firearms are

7

like expensive tools, which their owners keep and maintain over long periods of time. The reason owners of firearms generally maintain firearms and ammunition in and about their home or vehicles include the fact that possession of them in and about the home or vehicles permits easy access to the firearms and ammunition. Additionally, firearms must be maintained in an environment where they be secure from theft, as well as safe from rust and corrosion. In the residence, in the vehicle and on the person, the firearm is readily available in the event the need for use arises.

This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## RESIDENCE TO BE SEARCHED

Based upon my training and experience and the facts set forth herein, there is probable cause to believe that the evidence of violations of Title 18, United States Code, Section 922(g)(1), Title 21 United States Code, Section 841(a)(1), Title 21, United States Code, Section 846 and Title 21, United State Code, Section 843 will be located at **900 E 4th Street, Tahlequah, OK**, the residence of **Dave "Jug" WILSON**, as fully described in Attachment "A"; and evidence will be located at the suspected premises described herein, and in Attachment "B", including all storage places, safes, garages, structures and where requested, any automobiles which may be found within the curtilage of said suspected premises. Attachment "A" and Attachment "B" are attached hereto and incorporated herein by reference. Furthermore, I know that the aforementioned residence is in the Eastern District of Oklahoma.

## CRIMINAL HISTORY OF DAVE ELLIS WILSON "JUG"

**Dave Ellis "Jug" WILSON** is a multi-convicted felon and as such prohibited from the possession of firearms and/or ammunition. Specifically, **WILSON** has been convicted of five (5)

8

counts of Second Degree Burglary out of Cherokee County, Oklahoma. (Cherokee County CF-94-208). **WILSON** was sentenced to a term of seven (7) years in the Oklahoma Department of Corrections. **WILSON** was also convicted of three counts of Second Degree Burglary out of Cherokee County, Oklahoma (Cherokee County CF-94-199) and sentenced to a term of seven (7) years in the Oklahoma Department of Corrections. In addition, **WILSON** was convicted of one (1) count of Second Degree Burglary out of Cherokee County, Oklahoma (Cherokee County CF-94-157) and sentenced to a term of seven (7) years in the Oklahoma Department of Corrections. **WILSON** was convicted out of Cherokee County, Oklahoma (Cherokee Count CF-94-143) for one (1) count of Second Degree Burglary and sentenced to a term of seven (7) years in the Oklahoma Department of Corrections. **WILSON** was also convicted of Second Degree Burglary out of Cherokee County, Oklahoma (Cherokee County CF-94-87A) and was sentenced to a term of (7) years in the Oklahoma Department of Corrections. **WILSON** was also convicted of Robbery with a Firearm and Larceny of an Automobile out of Cherokee County, Oklahoma (Cherokee County CF-96-341). **WILSON** was sentenced to twenty-five (25) years in the Oklahoma Department of Corrections. **WILSON** was granted parole in 2007. **WILSON** was also convicted of Conspiracy to Possess with Intent to Distribute and Distribution of Controlled Substances out of the United States Eastern District of Oklahoma (EDOK CR-09-00097-005-RAW). **WILSON** was sentenced to 97 months imprisonment in the Federal Bureau of Prisons to be followed by 60 months of supervised release.

## PROBABLE CAUSE

On November 7, 2017, Cherokee County Sheriff's Office (CCSO) conducted a controlled buy of methamphetamine from **Dave "Jug" WILSON** utilizing a confidential informant, hereafter referred to as CI#1. CI#1 was searched for contraband by investigators and then provided with

9

$80 in United States Currency and an electronic recording device. CI#1 was then taken by an undercover investigator to **900 E 4th Street, Tahlequah, OK**, the residence of **WILSON**. CI#1 exited the vehicle and went to the front door of the residence. CI#1 entered the residence and a short time later exited and provided the undercover investigator with a small white plastic bag which contained approximately one (1) gram of suspected methamphetamine. CI#1 informed investigators that the methamphetamine was supplied to them by **WILSON**. CI#1 and the undercover investigator returned to a predetermined location where CI#1 was again searched for contraband. The substance purchased was field tested in a NIK Test Kit. The substance tested positive for the presence of methamphetamine. The suspected methamphetamine was sent to the Oklahoma State Bureau of Investigation (OSBI) for further analysis.

On November 8, 2017, CCSO executed a state search warrant at a residence in Cherokee County. Ultimately, deputies recovered a large quantity of methamphetamine and two firearms. The subject, hereafter referred to as Cooperating Defendant #1 (CD#1) was interviewed by investigators. CD#1 admitted that they have conducted methamphetamine transactions with **WILSON** in October 2017. The transaction was for approximately ½ ounce of methamphetamine. Investigators searched CD#1 cellular telephone. Throughout the phone were several text messages from the following phone number known to be that of **WILSON: 918-822-4017**. The number was listed in CD#1's cellular telephone as belonging to "**Jug.**" For instance, one text message from **Jug** to CD#1 on October 10, 2017 at 5:55 a.m. stated, "Just got a lil bit I might be able to do a half." Another text message on October 12, 2017 at 12:31 a.m. stated, "He better not step on the shit bro is it shards or what he ain't here yet." Another text message conversation between **Jug** and CD#1 occurred on October 20, 2017 at approximately 1:36 a.m. The conversation went as follows: "**Jug** – Call me back asap – **Jug** – Now / CD#1 –Easy now, workin' on my truck what's up? / **Jug**

10

– Guess you don't want this 400 then / CD#1 – I ain't got that much trying to play catch up since Andy got me. / **Jug** – Andy who? / CD#1 – Dreadfulwater/ **Jug** – U wanna go get him now he got me for 300 he open the door for me." There were numerous other similar messages throughout the phone.

On November 14, 2017, I conducted an interview of an additional cooperating defendant hereafter referred to as CD#2.  CD#2 admitted that they have purchased narcotics on at least two occasions from **Dave WILSON** in the past six months.  CD#2 stated that they believed the narcotics were of low quality and referred to it as bath salt.  CD#2 then advised that **WILSON** was in possession of firearms.  CD#2 specifically saw **WILSON** in possession of a 9mm semi-automatic pistol and a .40 caliber semi-automatic pistol.  When asked where these transactions occurred, CD#2 advised that they took place at **WILSON's** residence on 4th Street near Tulsa Teacher's Credit Union.  CD#2 was then shown the area on Google Maps, CD#2 identified **900 E 4th Street, Tahlequah, OK** as the residence of **WILSON.**

On November 15, 2017, Tahlequah Police Department Investigators (TPD) conducted a controlled buy of methamphetamine from **WILSON** utilizing a confidential informant, hereafter referred to as CI#2.  CI#2 made a phone call to **WILSON's** cell phone **(918-822-4017)** and arranged the purchase of $60 worth of methamphetamine.  CI#2 was searched for contraband and then taken to the residence of **WILSON**, which is located at **900 E 4th Street, Tahlequah, OK.** Constant visual surveillance was maintained on CI#2 until CI#2 entered the residence.  After a short time, CI#2 returned to the investigators and relinquished a plastic baggy which contained approximately 0.8 grams of methamphetamine.  CI#2 purported the methamphetamine was provided to them by **WILSON.** CI#2 was again searched for contraband.  The substance was field

11

tested in a NIK test kit and it field tested positive for the presence of methamphetamine. The substance was sent to OSBI for further analysis.

On November 28, 2017, Cherokee County Sheriff's Investigators interviewed an additional cooperating defendant hereafter referred to as CD#3. CD#3 said that they have known **Dave WILSON** or "**Jug**" for about 6 months. CD#3 advised that they had seen a gun at his house when CD#3 first met him (approximately six (6) months ago). CD#3 said that **WILSON** tried to sell him a Glock .357 sig, but the price ($350) was too high for CD#3 to buy. Additionally, CD#3 said that the firearm had the serial number removed. CD#3 said that this occurred at **WILSON's** residence, which CD#3 said was located on 4th Street in Tahlequah, OK. CD#3 said the firearm was laying on the bed in **WILSON's** bedroom. CD#3 advised that there were drugs present (methamphetamine), but CD#3 really didn't pay attention to it.

On December 11, 2017, I conducted an interview of another cooperating defendant hereafter referred to as CD#4. CD#4 stated that they have sold to and purchased methamphetamine from **Dave WILSON** as recently as November 2017. CD#4 said that they have purchased an "eight-ball" of methamphetamine on at least two or three occasions. CD#4 stated that they have sold small quantities of methamphetamine to **WILSON** and has sold **WILSON** at least ¼ pound of marijuana. CD#4 cellular phone was searched. There were numerous text messages on CD#4's cellular telephone between **WILSON** and CD#4. The phone number **918-822-4017** was listed as **Jug**. On May 28, 2017 at 10:03 p.m. one text message from **Jug** to CD#4 stated, "Hey old buddy get up an get around I need you so I can get that cash an get on to t-town an take care of us ok." CD#4 advised me this text message was regarding obtaining methamphetamine. CD#4 then informed us that **WILSON,** as recent as two weeks ago, was trying to sell a 30-06 rifle. CD#4

never actually saw the rifle though. CD#4 advised that **WILSON** was driving a maroon car and said that **WILSON** was currently living with his mother Leona (Martin).

On December 11, 2017, investigators contacted Tahlequah Public Works and learned that the electrical utilities at **900 E 4th Street, Tahlequah, OK** were in currently in the name of Leona Martin, whom investigators know to be **WILSON's** mother. Also on this date, investigators observed a maroon Chevrolet Impala bearing Oklahoma license plate CMR296. An NCIC query of this vehicle revealed that it is registered to Leona Martin **900 E 4th Street, Tahlequah, OK 74464** and has a secondary owner of **Dave WILSON.** A query of Accurint records, indicated that **Dave WILSON** resides at **900 E 4th Street, Tahlequah, OK,** along with Leona Martin.

Since this affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to justify the issuance of a search warrant for the described premises, I have not included each and every fact known concerning this investigation to me and others involved in this matter. I have set forth only the facts that I believe are essential to establish the necessary foundation for a search warrant ordering the search of the described premises. Furthermore I believe there is probable cause that evidence of violations of Title 18, United States Code, Section 922(g)(1), Title 21, United States Code, Section 846, Title 21, United States Code, Section 841(a)(1), and Title 21, United States Code, Section 843, will be found at the residence of **Dave Ellis WILSON "Jug"**, located at **900 E 4th Street, Tahlequah, OK** within the Eastern District of Oklahoma.

Ashley N. Stephens, Special Agent, ATF

Subscribed and sworn before me this 13th day of December, 2017.

KIMBERLY E. WEST
United States Magistrate Judge

13

## ATTACHMENT "A"

900 E 4th Street, Tahlequah, OK
Eastern District of Oklahoma



The location to be searched is a single story, single-family residence as well as any outbuildings and vehicle which may be on the curtilage. The residence has brick and mortar walls with black trim and asphalt shingles covering the roof. The front door of the residence faces to the north. To get to the residence, beginning from the Tahlequah Police Department, located at 100 Phoenix, turn right (east) onto W. Choctaw Street. Travel approximately 1.6 miles to the intersection of S. College Avenue. Turn right (south) onto S. College Ave and travel approximately 0.8 miles to the intersection of W. 4th Street. Turn left (east) onto W 4th Street. Travel approximately 0.6 miles to the intersection of E. 4th Street (W 4th Street becomes E 4th Street) and Jay Lane. The residence is the first house east of this intersection on the south side of E 4th Street.

**ATTACHMENT "B"**

a. Any all firearms with unknown serial numbers, which firearm(s) are possessed by prohibited individual(s). Any items pertaining to the possession, ownership and/or disposition of any firearm, to include but not limited to gun cases, ammunition, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs and video tapes of firearms or person(s) in possession of firearms, acquisition or ownership documents, and receipts for the purchase and for repair of all of these items

b. Records to establish the persons who control, possession, custody or dominion over property searched and from which evidence is seized, to include but not limited to: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, financial documents, keys, photographs, leases, mortgage bills and telephone answering machine introductions and messages, and all records related to telephone records.

c. Books, records, receipts, notes, ledgers, and other papers related to the distribution of controlled substances.

d. Personal books, and papers reflecting, names, addresses, telephones numbers, and other contact or identification data relating to the distribution of controlled substances.

e. Cellular telephones used to facilitate a drug trafficking crime. In addition the applied-for warrant would authorize the forensic examination of these cellular devices for the purpose of identifying electronically stored data.

f. Cash, currency, and records related to income and expenditures of money and wealth concerning controlled substances, including but not limited to: money orders, wire transfers, credit card records, cashier checks, receipts, bank statements, passbooks, checkbooks, check registers, storage unit keys, notes and receipts for storage unit(s) and safe deposit box keys.

g. Surveillance cameras, televisions, scanners, police radios, video, any other equipment used for the detection of police presence.